Court wants to thank you for taking this case. You're welcome, Your Honor. Thank you for appointing me. I'm Linda Sheffield. I represent Charles Daniel Koss. I'd like to say that I'm going to be filing a supplemental document that I received yesterday afternoon, so please don't decide the case until after next week. To just begin with, I don't want to go into what it is since it's not before the court yet, but I've served opposing counsel with it and I'll be sending it in. First of all, I'd like... Well, when you say you don't want to go into it with the court, is it something that should affect our decision? I think so, yes, sir. It's simply a document that I received that would support my position and that really it sort of goes to the issue of what should have been done below. I mean, Mr. Koss was given a mental health examination and he's now been given a physical health examination and found that there's something wrong with his brain, so I'm going to be presenting that document and try to argue with you to remand the case. Whether I'll get anywhere or not, I don't know, but I really need to try. When will we see it? Pardon me? When will we see it? I just got it yesterday when I was here, so it's just on my iPad, but I'll send it in Monday. I will electronically file it Monday. Thank you. I'd like to go to the issue of whether on the double counting of the dollar amount, stating that the money order was written, that he got the money from Social Security and then he tried to pay it with government money. In the Shirley case, which is Judge Collison's case, it makes it very clear that these monies are not separate funds, that they are all from the same Treasury account, therefore the loss, and it's my position that the loss would have been exactly the same thing, the loss to the government. It would have gone from one pocket to the other had that check been honored, that Mr. Koss drew up the money order that he tried to pay the $212,000 with. So under Shirley, I believe that that is authority, that there was only, would have only been one victim, which is the government's general fund, even though these funds that pay for disability are from, they're from like these trust funds that are created to pay for, to disabled people or for Social Security or for Medicaid, but still, it's this case states it all comes from the general fund, and that is Shirley at page 664. I want to talk about, just mention count two briefly, because it's my opinion that it reversed on sufficiency of evidence grounds. This is the $250 that was just deposited into Koss's checking account, where his regular disability benefits were deposited, and the jury had so many questions about that, the only answer that they ever got was, you've got your instructions, that's what they are. These are document 115, it's the jury's responsibility to remember the evidence and follow the court's instructions. Every time the jury asked the question, that's what the court said back, and I believe they were confused. I believe that there was not sufficient evidence to show knowledge. Knowledge is a requirement under 641, and there was nothing to show that Koss knew that he was getting this $250 stipend. Now, yesterday, we all got served with some error by the government, and the government was nice enough to send me those cases since I traveled yesterday, but I took a look back through the record and took a look at some of the objections that Koss did make. Now, Koss filed some documents that were very difficult to understand, but in the gibberish of those documents, he cited the U.S. Constitution, he cited the Fifth Amendment, those are your docket entries 118 through 126, and then he filed a bill of peace at docket entry 132. He does invoke his constitutional rights, he says he objects to everything, he wants to preserve his liberty. At sentencing, he said that he filed objections to the pre-sentence report, but apparently they weren't received. But the court said, well, you can talk about this anyway. It wasn't really discussed thoroughly, so I don't know if he just didn't have the paper, I don't know if what he was referring to was his bill of peace, I'm not sure, it's not clear in the record. But on the record, Mr. Alford says, well, at page seven of the sentencing, he says, well, he didn't object to the effect of the guidelines in any way, but it's my position that he did. He didn't do it specifically because he's not a lawyer, and he wouldn't let his lawyers represent him. But he did object, and he used the Constitution, he used the Fifth Amendment. And then, on page 10 of sentencing, he said, even though he fired Mr. Kuchar, that he never waived his right to counsel. Mr. Koss had a difficult time getting along with his lawyers. He was filing these sovereign citizen documents. I got along with Mr. Koss just fine, but it's just he didn't get along with the people that represented him, and therefore, he wound up representing himself, and it was a disaster. At page 17 of sentencing, he did object to the upward variance, and after the judge stated what his reasons for sentencing and what he was going to do, at page 24, the judge asked the government, is there anything you wanna say? And he said, no. And Mr. Koss said, well, I wanna say something, and he said, no, you won't be allowed to say anything. So, I don't know if he was going to object or not, but he was basically cut off. So now to say, well, this is all plain error, and you can't meet these grounds, and you can't show that the sentence below that you were prejudiced by it, is unfair, I believe. I'd like to go to the handwriting. This was a real problem for me. This handwriting... I mean, first of all, he gave six of 20 exemplars. He started giving the exemplars, and for some reason, after six, he didn't wanna give anymore. But he never denied any of the handwriting was his. He always admitted to the handwriting. Nevertheless, it was a court order. He served eight months in jail on civil contempt from September 14th, 2011 to May 7th, 2012. The sentence began on May 7th, 2012. So then... But the handwriting comes up in the contempt, then he gets obstructed two levels for the handwriting. Then there's a jury instruction, which instruction 21 really is okay, but when you couple it with instruction 8, where I find, and I've made the decision, and it's my personal... I mean, the judge gives his personal opinion. So, on Casa's handwriting. And at that point, that modifies instruction 21, which would have been fine, because it let them consider authorship. But authorship was never contested, and the judge's personal opinion didn't have any place in that instruction. The jury was not about to disagree with the judge, in my opinion. I think that it started, while it didn't charge an inference of guilt, I believe... Conceptually, I believe that the inference of guilt was there. If I had been a juror, I believe that that's what I would have thought. I believe we have to look at that together. And when a personal opinion by a court will impact an issue that the jury has to decide, then that becomes a problem in a case. And that's that old Forche case that I cited to you. And as far as the double counting goes, the variance... You're objecting to the taking of judicial notice of what fact in particular? Of the... Are you speaking of the jury instruction, sir? When he says... Right. I've decided to accept as proved. Yes. Isn't that what you're talking about? Yes, sir. I accept as proved. What fact are you referring to? The fact that he wrote those documents. It was never contested, but everybody keeps talking to the jury about this handwriting as though this is something that the government has to prove, that this is something that Coss is denying. And Coss is not denying it. I accept as proved. Well, Coss never denied it. And for the judge to... Denied what? Denied... He never denied the handwriting was his. But that's not what the judge even noticed, is it? I thought the judge just noticed that Coss refused to comply with the orders. Right. He... Exactly. He refused to comply with the order and he wrote the order. Do you object to the judge taking judicial notice that Coss refused to comply with the orders? I object to him... Yes. I don't know if I object to it the same way that you're saying it, but I find... This is what I find with it. I find it a personal opinion that impacted the jury somehow in thinking that there was something wrong, that there was something that the judge is finding that he is guilty of this because the judge is finding that he gives the inference by failing to give the handwriting exemplars that there is an inference of guilt, an inference of criminality, an inference of that Coss did something wrong, when Coss never denied that he wrote those things. And there was no need to call attention to that. This handwriting has been used and used and used. He got the contempt time, he got the obstruction of justice because he didn't provide the exemplars. Part of the sophisticated means, the variance. He got a lot of time because of that handwriting, which he never denied and because he didn't finish those 14 other exemplars. And nobody ever said... I understand that it's a violation of a court order and I understand that when you have a court order, you must obey it. But on the other hand, when you've partially complied, and in this instance, since he never denied it, it's almost a substantial compliance with a court order. I believe that it biased the jury. That is the way I see it. And that's the way the cases that I cited, I believe, somewhat support me. So are you objecting to the judicial notice or are you objecting to the admission of any evidence about his refusal to comply? I'm objecting to the way it was done. I believe... What I'm objecting to is the inference of guilt. Well, suppose the government had put on evidence that he refused to comply by putting on an FBI agent who says the guy wouldn't give the exemplars. They did. They did put it on. Is that what you're objecting to? Yes. I object to the whole thing being made such a big deal of when it was not a big deal in the first place. I think that it prejudiced him. I think it prejudiced him substantially. And every single thing that the court did to enhance his sentence had something to do with his handwriting. So he wound up being biased by it in sentencing, whether he was biased by it in the trial or not. The handwriting wound up being everything in this case, his failure to provide the handwriting samples. I would like to reserve a little bit of time for rebuttal if that is okay. Thank you. Mr. Alford. Good morning. May it please the court. I'm Special Assistant United States Attorney Trey Alford, and I represent the United States in this matter. I'd like to begin by just going through the issues that were raised by the appellant as they were raised in the appellate brief. First is the issue of sufficiency of evidence and whether or not the United States presented sufficient evidence at trial to establish the mens rea for the five counts of conviction. Obviously, the standard of review for sufficiency of evidence is whether viewing the evidence in a light most favorable to the verdicts of guilty, a reasonable jury could have concluded that the defendant was guilty. In this case, the United States presented an abundance of evidence that the defendant, Charles Koss, who had been on disability benefits since 1987, ran a mortgage company on a full time basis, and that he concealed his work activity from the Social Security Administration in many ways. In some ways, by lying to the Social Security Administration about what he was actually doing, by concealing the fact, by having income from the company go to his wife's Social Security number instead of his own, by identifying his wife as the president of the company when numerous employees and people familiar with the work that Mr. Koss was doing testified that he was the president, he was the one managing embassy mortgage. Clearly, all of that evidence that the United States presented is evidence that the jury could have considered when determining whether or not the defendant had the intent to defraud the Social Security Administration. Moreover, he made numerous admissions. He even told the agents, I can see on paper how this is a criminal case. Well, obviously, a jury could consider that as pretty good evidence of the defendant's intent to defraud the Social Security Administration. The United States presented numerous title logs and individuals from First American Title Company that indicated that the defendant had approximately 500 closings where he was the lead closing agent dealing with his customer. The United States presented evidence from the defendant's landlord that said he was there every day and they were co-located, his landlord, Dr. Goldsworthy, was co-located with him and was a chiropractor and saw him on a daily basis. The United States also presented evidence that this defendant, who supposedly was suffering from a disability that was so severe he was unable to work, had a very active lifestyle. He was going to the beach house down at the Ozarks. He was gambling significant sums of money with his wife. He was playing with horseshoes. He was golfing. You know, he had a very active lifestyle. He was hunting. He had an arsenal of firearms that he used to hunt with. All of this evidence was a material to whether or not he was disabled. Yet it wasn't until 2006 when the Social Security Administration had evidence that he was running this embassy mortgage business that he made any admissions about that activity, and even then he minimized his conduct. What about count two, the $250 stimulus package check? What evidence was there in the record to show that he did know he received that? The evidence in the record is simple. It's one exhibit, and it's his monthly bank statement, which on the statement, and the jury requested to look at this, it had on there the $250 payment from the United States Treasury, and that was the evidence the United States used to establish his knowledge, and based off of the standard of review, the jury determined that was enough to find beyond a reasonable doubt that he knew he received that money, and they convicted him on that count. And now, based on the standard of review, the United States believes that's sufficient evidence to affirm the conviction. So it was just the one document? With respect to his knowledge that he received that $250, yes, Your Honor. With respect to counts four and five, the United States also presented ample evidence that the defendant intended to defraud, and this relates to this false negotiable instrument that the defendant mailed to the Social Security Administration. On its face, this document looks like a real negotiable instrument, and the jury had an opportunity to look at it, and it was false. I mean, the United States presented expert testimony from Matthew Johnson, who explained there are no private accounts with the U.S. Treasury, but there were evidence and indicia on the face of it that would make it look like a real document, and that evinces his mindset, that costs his mindset of trying to defraud the Treasury. Also, the United States notes going to the issues with respect to the judicial notice of the contempt orders, it's clear case law that individuals that refuse orders to provide handwriting samples, that that is a negative inference that a jury can draw from that, and that's why we asked the court for judicial notice of those contempt orders. Just speaking briefly about that issue, the defendants and the appellants argument in this case, I can't imagine any scenario where you could ever have judicial notice, because whenever you have judicial notice, the judge has to say, I'm judicially noticing something, and the defendants argument in this case appears to be that, well, the judge can never input himself into this process, yet we have an Eighth Circuit pattern jury instruction that was used in this case, where the judge appropriately said, I'm taking judicial  with court orders, and then leading on to that, he provided jury instruction 21, which is a fair inference that the jury could have, that the jury could conclude, but they didn't have to, they're the ultimate arbiter of fact, they could conclude that his failure to do so is evidence that he did, in fact, write these documents. So, with respect... My question about this matter is whether the fact of refusal to comply is a judicial notice, or whether that's something that the government should have to prove through evidence. I think his judicial notice was that I held him in contempt. No, it says, I have decided to accept as proved the fact that defendant refused to comply with court orders. I think your honor, doesn't it refer to orders that are the contempt orders in the instruction? Those orders are identified as exhibits 80, 81, and 109. Right. But those are the orders compelling him to provide the exemplars, aren't they? They are, but they also found him in contempt, which is why I mentioned the contempt, but they also find him in contempt, if you look at those exhibits, your honor. You mean the same order that ordered him to comply also held him in contempt? No, I believe that, my belief is that at least one of those orders is a finding that he was held in contempt, that he was ordered to comply, and he failed to comply, and so he's being held in civil contempt. It was basically memorializing what happened. Well, it's not the way the instruction reads, but in any event, my question still is why that's a proper subject of judicial notice, the refusal to comply? Well, it's an order that the court had judged. I mean, the United States also presented evidence in other ways through federal agents, but I think that it's clear that the court can take judicial notice of something that procedurally happened. I don't know of any preclusion to that, I guess is maybe the better way to say that. I'm unaware of anything that would preclude a court from doing that. How long did the investigation take? I'm sorry, your honor? How long did the investigation, Mr. Goss, take? There were two parts of this investigation, your honor. The Social Security Administration Office of the Inspector General had an open case from around, I believe it was around, beginning as early as 2006, and around, my memory could be flawed, around 2010 was when the defendant created this false negotiable instrument and mailed it to the Social Security Administration in Philadelphia, and at that time, because that on its face was attempting to draw an account from the Treasury, the Treasury Inspector General for Tax Administration opened up a case, and so it was really a total investigation. It was almost six, or I'm sorry, about five years almost total between both investigations. Going back then to the issues, with respect to the double counting issue, the United States believes that with respect to both the obstruction of justice enhancement and the double counting, that the standard review for both of those are plain error. And the reason is, is that at sentencing, Judge Wimes point blank asked Mr. Goss, after relaying what his computations were, do you have any objections to these computations, a very specific question. And Mr. Goss said no. Therefore, he did not preserve his objections to the computations for both the double counting, and he did not preserve it with respect to the obstruction of justice enhancement. Therefore, when we look at plain error law, specifically the Perini case, which I gave notice to the court in my 28J letter, the defendant must show a reasonable probability, based on the appellate record as a whole, that but for the error, he would have received a more favorable sentence. But when you review Judge Wimes' basis for his sentencing and the sentencing factors, it's very clear that Judge Wimes, well let's put it this way, there's no evidence to say that there would be a different sentence. And that's what the defendant has to show. The appellant must show, but based on the appellate record, that there would be a different sentence if the guidelines computations were changed as a result of the appellate review. And the appellant simply cannot meet that burden based off of the record. Moreover, the sentence is very reasonable. You know, Judge Wines made it very clear, the sentencing factors that he considered. He considered the nature of the offense, the fact that it was such a long standing fraudulent scheme, month after month, year after year, this defendant was stealing from the disability fund. He made it very clear that he found it particularly egregious that he was stealing from the disability fund. That there were individuals that are so disabled, they're unable to work, and this money is meant for them. And we have an individual out here who's raiding that fund. He also made it very clear that throughout the case that he felt like this particular defendant needed specific deterrence, and also that there was a need for general deterrence. There was evidence presented that the defendant was working in concert with at least another person. And that Judge Wines felt like a sentence with a severe punishment was necessary to send both an appropriate message to the defendant, as well as general deterrence. Also along those lines, he made it very clear that there was a need to have respect for the law. And it's very detailed in my brief, and Judge Larson in numerous orders detailed the obstructive nature that this defendant had throughout all the pretrial proceedings. Yelling at the court, non-responsive, refusing to answer questions. And going also to the obstruction of justice enhancement, my learned opponent had indicated that the obstruction enhancement was applied simply because the defendant refused to provide handwriting samples. But that's not actually correct. It was also, if you read the PSR, expressly identified that one of the issues that the court considered from probation was that there were frivolous filings in retaliation against federal employees. And the United States cited the Goodike case, which was a 2011 case that this court considered. And in that case, another sovereign citizen who filed frivolous documents against federal employees in retaliation. That was sufficient for a basis to have the two-point obstruction of justice enhancement, and that's exactly what we have here. This particular defendant filed bogus form 56 IRS tax filing documents where he indicated that Judge Wimes, Judge Guyton, and myself were his fiduciary, and that was simply a false statement. That in and of itself justifies an obstruction of justice enhancement. But when you couple that, coupled with the fact that he had to be forcibly removed from a grand jury room, that he was held in contempt on three different occasions, that he was, quote, unresponsive and generally uncooperative, quote, argumentative, stated that he wasn't present when he was, yelling and interrupting. All of these factors all together are all factors that also justify Judge Wines' decision that an upward variance in this case was appropriate. So in light of all those issues, if the court has no further questions, the United States would simply ask that the convictions and sentence be affirmed. Okay, thank you. Over three minutes, I think, three, three, two. Thank you. I'd like to point out in the sentencing, when they are talking about the pre-sentence report on page six, Koss doesn't say that he doesn't have any objections, he said that he'd sent in a number of objections. And the court says, well, if I inadvertently missed anything you're referring to, he says, no, I'm fine with it, sir. It's not clear that he doesn't have any objections. No, I'm fine with it, sir, in response to, you can have a copy of it, you can articulate for the record, but he had filed something. As far as the variance goes, he did object to the variance on page 17, as soon as the judge says that. And then, of course, after the court says all his reasons for doing what he's going to do, again, he tries to object and is cut off. It is the variance that is based on the fiduciary filings. The obstruction of justice is based on documents filed in general. To me, that indicates that they keep putting, they are trying to parse these documents out. But conceptually, all of these filings that he put in are these sovereign citizen kinds of documents. Even though he denies being a sovereign citizen, they're the kind of things that sovereign citizen people file. And in the obstruction it was used, in the variance it was used, and- Well, did he use pre-printed forms? Yes, some were pre-printed, one was a handwritten document. Now, these documents had to come from somewhere. He certainly didn't have them with him in the prison. So there's a question of whether they were filed on his behalf. I know that. I looked at the postmark on the envelope, which is in the record. It is not the same zip code, not sent from the same zip code that his prison zip code is. So that's in the record. So it appears that they were sent in from outside, based upon the zip codes that are in the record. And in the variance also, the court uses the fact that to give him another six months that he got social security disability. Which, of course, is what put him in trouble in the first place, and what put him at level seven, and what added another 12 levels to this. And then he says that that's despicable, that there are Americans who truly need it. This judge was very personal with Mr. Koss. This judge was very upset. This affected the judgment. I think that Mr. Koss can clearly prove that if he was sentenced based upon the actual conduct in his case, without the dollar amount being double counted, without the handwriting being used over and over and over, plus the civil contempt for it. And without these documents that were filed being used in every enhancement. I understand the sophisticated means because of the money order, but the variance and the obstruction of justice, I believe, have to fall. And I believe that the sentence is unreasonable. And the court could have taken into consideration the fact that he did do eight months in prison, prior to even being sentenced, for the handwriting, once again. How old is he, I forget. Pardon me? How old is he? He is 64 years old now. Thank you. Thank you both. We'll move on to the second case.